Conway Beverley Carter BROWN,
Petitioner–Appellee,

v.

SECRETARY, DEPARTMENT OF
HEALTH AND HUMAN
SERVICES, Respondent–Appellant.

No. 90–5046.

United States Court of Appeals,
Federal Circuit.

Nov. 30, 1990.

James L. Sanderlin, McGuire, Woods, Battle & Boothe, Richmond, Va., argued, for petitioner-appellee. With him on the brief were Rosewell Page, III and Edward M. Macon, Richmond, Va.

Lorie M. Beranek, Dept. of Justice, Washington, D.C., argued, for respondent-appellant. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Barbara C. Biddle, Washington, D.C. Also on the brief was Barbara J. Hudson, Atty., Office of the Gen. Counsel, Dept. of Health and Human Services, Rockville, Md., of counsel.

Before MARKEY, MAYER and LOURIE, Circuit Judges.

OPINION

MAYER, Circuit Judge.

The Secretary of Health and Human Services appeals the judgment of the Claims Court, 18 Cl.Ct. 834 (1989), compensating Conway Beverley Carter Brown under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa–10 to –34 (1988) (current version at 42 U.S.C.A. §§ 300aa–10 to –34 (West Supp.1990)). We reverse in part and remand.

## Background

As an infant, in 1967 Brown contracted polio after she was given the Sabin oral polio vaccine. The disease left her with permanent disabilities, including muscle atrophy and paralysis in one arm and weakness in her legs. To alleviate these disabilities, her parents spent large sums, and despite her remarkable progress, additional expenses for corrective surgery and continuing therapy are foreseeable throughout her life.

In 1986, Congress established the National Vaccine Injury Compensation Program (the Program) as an alternative to tort suits for persons seeking compensation for vaccine-related injuries or death. The Program not only provides relief for those injured after it was established, but also, at a reduced level, for those injured before its enactment. Because her injury occurred in 1967, Brown qualifies under section 2115(b), 42 U.S.C.A. § 300aa–15(b) (West Supp.1990), which provides compensation for injuries incurred before October 1, 1988, the effective date of the Program.

Brown filed her claim for compensation on September 30, 1988. The Secretary answered on March 10, 1989, but his counsel from the Department of Justice subsequently withdrew from the case, apparently because of understaffing and budgetary constraints. Pursuant to section 2112(c) of the Program, 42 U.S.C. § 300aa–12(c) (1988), Brown's claim proceeded before a special master who issued his report and recommended decision on September 13, 1989, awarding a total of $881,442.76: $652,590 for medical and rehabilitative expenses, $200,000 for pain and suffering and emotional distress, and $28,852.76 for attorneys' fees and costs. The Secretary's counsel then filed a notice of appearance and objected to the special master's report on October 3, 1989. In response, the Claims Court conducted a *de novo* review of the master's report pursuant to section 2112(d)(1), *id.* § 300aa–12(d)(1),* and re-

duced the award to $525,462.26: $324,-575.50 for medical and rehabilitative expenses, $175,000 for pain and suffering, and $25,886.76 for attorneys' fees and costs. The Secretary appeals because he believes the Claims Court erred both in its construction of the limitations imposed by section 2115(b), 42 U.S.C.A. § 300aa–15(b) (West Supp.1990), on Brown's compensation award, and in its award to Brown for wheelchairs and future architectural modifications to her house as part of medical and rehabilitative expenses.

## Discussion

As a threshold matter, Brown argues that the Secretary's failure to participate in the proceedings before the special master precludes his appeal of any issue. We think not. When this case came before the Claims Court, it had the authority under section 2112(d)(1), 42 U.S.C. § 300aa–12(d)(1) (1988), to decide *de novo* any matter decided by the special master, including findings of fact and conclusions of law. That section explicitly said either party could raise an objection to the master's findings or conclusions in the Claims Court, and nowhere conditioned the right to object upon their participation before the special master. The preceding section, in fact, described the masters as "adjuncts" to the Claims Court. *Id.* § 300aa–12(c)(2).

Brown also argues that the Secretary's absence from the special master proceeding prejudiced her case. She reasons that if the Secretary had participated, she could have shaped her case to meet the objections he raised in the Claims Court. But the main issue raised by the Secretary is whether the special master and the Claims Court correctly interpreted section 2115(b), 42 U.S.C.A. § 300aa–15(b) (West Supp. 1990), a question of law not dependent on the sufficiency of the evidence. There is no question of Brown's entitlement to some compensation under the Program because she meets the requirements for eligibility set forth in section 2113. 42 U.S.C.

---

* A recent amendment, not applicable to this case, now permits the Claims Court to set aside any findings or conclusions that are objected to by the moving party and found to be arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. 42 U.S.C.A. § 300aa–12(e)(2) (West Supp.1990).

§ 300aa–13 (1988). We see no prejudice in the Secretary's absence from the special master phase.

■ The crux of the appeal is the Claims Court's construction of section 300aa–15(b). Because it has been amended twice, our first task is to determine which version applies. The original law limited recovery in cases of pre-Program injury to unreimbursed actual expenses and reasonable projected expenses, including diagnosis, medical and remedial care, rehabilitation and the like. National Vaccine Injury Compensation Program, Pub.L. No. 99–660, § 311, 100 Stat. 3755, 3768 (1986). The 1987 amendments, which were part of the Program when it became effective, permitted some compensation for lost wages, pain and suffering, and attorneys fees. As amended, section 2115(b) provided that:

> Compensation awarded under the Program to a petitioner under section 300aa–11 of this title for a vaccine-related injury or death associated with the administration of a vaccine before October 1, 1988 may not include the compensation described in paragraph (1)(B) of subsection (a) of this section [relating to actual unreimbursable expenses incurred before the judgment] and may include attorneys' fees and other costs included in a judgment under subsection (e) of this section, except that the *total* amount that may be paid as compensation under paragraphs (3) and (4) of subsection (a) of this section [for lost wages and pain and suffering] *and included as attorneys' fees* and other costs under subsection (e) of this section may not exceed $30,000.

42 U.S.C. § 300aa–15(b) (1988) (emphasis added). This was the version in force when this case was in the Claims Court.

After the Claims Court entered judgment, there was another amendment to section 300aa–15(b). Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 6601(*l*)(1), 103 Stat. 2106, 2290 (1989). As a result of it, the subsection now reads:

> Compensation awarded under the Program to a petitioner under section 300aa–11 of this title for a vaccine-related injury or death associated with the administration of a vaccine before the effective date of this subpart may include the compensation described in paragraphs (1)(A) [awarding expenses relating to the injury] and (2) [awarding $250,000 in case of death] of subsection (a) and may also include an amount, not to exceed a *combined total* of $30,000, for—
>
> (1) lost earnings (as provided in paragraph (3) of subsection (a) of this section),
>
> (2) pain and suffering (as provided in paragraph (4) of subsection (a) of this section), and
>
> (3) reasonable attorneys' fees and costs (as provided in subsection (e) of this section).

42 U.S.C.A. § 300aa–15(b) (West Supp. 1990) (emphasis added). And this amendment specifically applies to all pending petitions, *id.* § 300aa–10 note (2), of which this is one, Brown's argument to the contrary notwithstanding.

Congress singled out section 300aa–15 when it set the effective date of the 1989 amendment. Amendments to other sections were made applicable only to petitions filed after the date of enactment and to pending petitions in which the evidentiary record was not closed. *Id.* § 300aa–10 note (1). With respect to section 300aa–15, however, the 1989 amendment applied to "*all* pending and subsequently filed petitions." *Id.* § 300aa–10 note (2) (emphasis added). Therefore, it applies to Brown's petition on appeal.

Our interpretation of the amended version of section 300aa–15(b) begins and ends with the guiding principle that absent ambiguous language or clearly contrary legislative intent, a statute is construed in accordance with its plain meaning. *Sullivan v. Stroop,* 496 U.S. ——, ——, 110 S.Ct. 2499, 2502, 110 L.Ed.2d 438 (1990); *Electronic Sys. Assocs., Inc. v. United States,* 895 F.2d 1398, 1400 (Fed.Cir.1990). This statute is clear on its face; the plain meaning is that in the aggregate compensation for lost wages, pain and suffering, and attorneys' fees cannot exceed $30,000. No other meaning is plausible.

Even under the earlier version of section 2115(b), 42 U.S.C. § 300aa–15(b) (1988), the $30,000 cap applied to the sum of lost wages, pain and suffering, and attorneys' fees. To be sure, that version could have been cast in less tortured prose, but a careful reading shows that the later version is merely a more straightforward rendition of the earlier one and does not change the meaning in any respect. From the structure of the section as a whole, it appears that the drafters of the amendment borrowed language from other subsections to conform the amendment of subsection (b) to the rest of the section. Specifically, subsection (e) discusses attorneys' fees using the following language: "the judgment of the United States Claims Court on a petition filed under section 2111 [*id.* § 300aa–11] awarding compensation shall *include* an amount to cover ... reasonable attorneys' fees." *Id.* § 300aa–15(e) (emphasis added). The language "and *included* as attorneys' fees" chosen for subsection (b) merely parallels the language of subsection (e). Therefore, the language in the 1987 version "and included as attorneys' fees" is not the equivalent of "that is attributable to attorneys' fees", as the Claims Court supposed, but means that the $30,000 cap applies to the sum of lost wages, pain and suffering, and attorneys' fees.

This is a fair construction of section 300aa–15(b). The emphasis of the legislation was prospective; Congress wanted to ensure continued vaccine production and stem the exit of manufacturers from the industry by giving those injured by vaccines in the future an alternative to tort suits against the manufacturers or dispensers. *See, e.g.,* H.R.Rep. No. 908, 99th Cong., 2d Sess. 6, *reprinted in* 1986 U.S. Code Cong. & Admin.News 6344, 6347. Compensating those injured before the Program came about does not promote Congress's objectives in the same way. In fact, Congress could have achieved its objectives without giving anything to those injured before the advent of the Program. However, it generously allowed compensation of the actual expenses incurred for pre-Program injuries, only limiting it for the less quantifiable costs of injury and for the costs associated with claiming the compensation. Though not as comprehensive a system as the one for future vaccine victims, it does give some measure of relief where often none would otherwise be available. Here, for example, any tort claim Brown may have had is now barred by the statute of limitations.

■ The other issue is whether the Claims Court properly allowed an award for wheelchairs and architectural modifications to Brown's house while refusing the same for specially-equipped vans and permanent home aid assistance beginning at age 40. Compensation is available under the Program only for "reasonably necessary" expenses. 42 U.S.C. § 300aa–15(a)(1)(A) (1988) (incorporated by reference into section 300aa–15(b)). The court reasoned that permanent home aid assistance and vans equipped to accommodate a wheelchair were reasonably necessary only if Brown became permanently nonambulatory. 18 Cl.Ct. at 842. Because it found insufficient evidence that she would, it refused to award anything for those items. *Id.* But it ordered compensation for architectural modifications and wheelchairs without regard to whether Brown would become permanently nonambulatory. *Id.*

On the face of it, these strike us as mutually exclusive propositions, but we cannot tell because we have no findings that might explain the divergent outcomes. We therefore remand for reconsideration of this issue.**

** Under section 300aa–21(a), a claimant may elect to accept the award of the Claims Court or to file a civil action in a state or federal court for damages arising from vaccine-related injuries or death. Brown filed an election to accept the Claims Court award before the Secretary noticed an appeal, and in any event the statute of limitations has long since run against her.

Therefore the judgment of the Claims Court is final and this court may exercise its appellate jurisdiction. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) ("Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that 'ends the litigation on the merits and leaves nothing for

*Conclusion*

Accordingly, we reverse the judgment of the Claims Court to the extent the award for pain and suffering and attorneys' fees exceeds $30,000, and we remand the case for further proceedings consistent with this opinion on the question of future expenses.

COSTS

No costs.

·REVERSED IN PART AND REMANDED.

the court to do but execute the judgment.'" (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945))). Likewise, it appears review here is appropriate under Article III of the Constitution because there is no risk our opinion would be impermissibly advisory; Brown has already elected to accept the judgment of the Claims Court. *See United States v. Nixon,* 418 U.S. 683, 696, 94

S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974). As amended in 1989, section 300aa–21(a) does not require claimants to make an election until after appeal to this court, 42 U.S.C.A. § 300aa–21(a) (West Supp.1990), but we intimate no view on the reviewability in this court of cases in which elections are not made before appeal.