# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| BEVERLI RILEY, | \* | |
| | \* | |
| Petitioner, | \* | No. 12-146V |
| | \* | Special Master Christian J. Moran |
| v. | \* | |
| | \* | Filed: June 28, 2013 |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | |
| | \* | Proof of Vaccination |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Lawrence R. Cohan, Anapol, Schwartz, et al., Philadelphia, PA, for petitioner.
Tara J. Kilfoyle, United States Dep't of Justice, Washington, DC, for respondent.

## FACT RULING AND ORDER[1]

On March 5, 2013, Beverli Riley ("Ms. Riley") filed a Petition for Vaccine Compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, et seq. (2012) (the "Vaccine Act" or "Program"). She alleges that the influenza ("flu") vaccine, which is contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3(a), and which she received on October 12, 2009, caused her to develop vasculitis and a vasculitic neuropathy.

Ms. Riley did not file any supporting documentation with her petition. Since filing the petition, she has submitted several sets of medical records.[2] A

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this ruling on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa–12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

[2] Ms. Riley's exhibits have been labeled with two different sets of numbers. One set of numbers is preceded by "P" and the exhibit number (e.g. P7 00019). The other set of numbers

(. . . continued)

fundamental proposition is that Ms. Riley received a vaccine listed on the Vaccine Injury Table. She alleges that she received a flu vaccine at Florida Hospital, where she worked as a nurse.

To date, Ms. Riley has not filed any records directly reflecting an October 12, 2009 flu vaccination. To support her claim that she did in fact receive the flu vaccine as alleged, Ms. Riley relies on her averments in her affidavit and those set forth in the affidavit of the nurse who allegedly administered the vaccine. Ms. Riley also relies on the medical records she has filed to date. The Secretary states that she has no basis to dispute Ms. Riley's vaccination, but defers to the undersigned to determine the credibility and reliability of the affidavits submitted and whether Ms. Riley's medical records establish by a preponderance of the evidence that she received the flu vaccine on October 12, 2009.

Based on the record as a whole, and for the reasons explained below, a preponderance of evidence supports a finding that Ms. Riley received the flu vaccine on October 12, 2009.

## Procedural History

Ms. Riley filed exhibits 1-8 on March 7, 2012. Included among these exhibits are records from Drs. Shoaib Siddiqui (exhibit 2), Khizar Malik (exhibit 4), Victor Politano (exhibit 7), and Abdul Aziz (exhibit 8), as well as a physical therapy evaluation from Florida Hospital (exhibit 6). She also filed an affidavit from Registered Nurse Dyan Sneeringer, who allegedly administered the flu vaccine to Ms. Riley on October 12, 2009. Exhibit 1, ¶ 5. On June 8, 2012, Ms. Riley filed updated records from Drs. Politano (exhibit 9), Aziz (exhibit 10), and Malik (exhibit 11).

During a status conference held on November 28, 2012, Ms. Riley indicated her inability to obtain a direct record of vaccination and inquired whether other documents could provide sufficient proof of vaccination. Specifically, she mentioned an incident report and the affidavit from Dyan Sneeringer. The Secretary questioned the reliability of Ms. Sneeringer's affidavit, arguing that Ms. Sneeringer did not indicate how she remembered the circumstances of an incident that occurred two years prior to her statement. At the conclusion of the status

appears below in bold typeface. In her motion for a ruling on the record, Ms. Riley inconsistently cites to one set or the other. All citations in this ruling are made to the set of numbers preceded by "P."

2

conference, the parties were informed that other documents and testimony may be sufficient to prove vaccination, but that such a determination can be made only after a review of the evidence submitted. See Order, issued Nov. 28, 2012.

On December 11, 2012, Ms. Riley was ordered to file an affidavit regarding her efforts to obtain a direct record of vaccination, a supplemental affidavit from Ms. Sneeringer, and the incident report she referenced during the November 28, 2012 status conference. On January 25, 2013, Ms. Riley filed her own affidavit (exhibit 16), a supplemental affidavit from Ms. Sneeringer (exhibit 17), a Florida Hospital Employee Incident Report Form, dated January 24, 2010 (exhibit 18), and a March 5, 2010 letter from the Vaccine Adverse Event Reporting System ("VAERS") staff confirming the receipt of Ms. Riley's adverse event report (exhibit 19).[3]

In another status conference held on January 29, 2013, the Secretary pointed out the absence of an affidavit from Ms. Riley detailing her efforts to obtain proof of vaccination. At the conclusion of the status conference, Ms. Riley indicated her intent to request a subpoena to obtain proof of vaccination from Florida Hospital. On March 22, 2013, she filed a letter from Florida Hospital's Health Information Management Department indicating that "[n]o records related to influenza vaccination were found for October 2009." Exhibit 20 at 9.

Following a status conference on April 2, 2013, during which Ms. Riley indicated that she had exhausted all efforts to obtain proof of vaccination,[4] she was ordered to file a motion for a ruling on the record to resolve the issue of vaccination. She moved for a ruling on the record ("Pet'r Mot.") on April 17, 2013. The Secretary filed her response ("Resp't Resp.") on May 1, 2013.

## Standards for Finding Vaccination

The Vaccine Act requires a petitioner to prove receipt of a vaccine by a preponderance of the evidence. 42 U.S.C. §§ 300aa-11(c)(1), -13(a)(1)(A). Under

---

[3] Ms. Riley filed her adverse event report (exhibit 21) on June 14, 2013. The date the form was completed, though difficult to read, appears to be March 1, 2010, four days before the date on the confirmation letter from VAERS.

[4] During the status conference, the Secretary also indicated that she had reached out to Florida Hospital to no avail.

this standard, the special master, before finding in favor of the party with the burden to prove a fact's existence, must "believe that the existence of a fact is more probable than its nonexistence." Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

In determining the persuasiveness of the evidence, the special master must assess "the record as a whole" and may not find that a petitioner received a vaccine "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Vaccine Rule 2 holds, in accordance with 42 U.S.C. § 300aa-11(c), that a petition shall be accompanied by "all available medical records supporting the allegations in the petition, including physician and hospital records relating to: the vaccination itself." Vaccine Rule 2(c)(2)(A)(i).

Although strictly contemporaneous documentation of vaccination from a health care provider is the best evidence, its production is not an absolute requirement. See Centmehaiey v. Sec'y of Health & Human Servs., 32 Fed. Cl. 612, 621 (1995) ("The lack of contemporaneous, documentary proof of a vaccination . . . does not necessarily bar recovery."). Vaccine Rule 2 states that "[i]f the required medical records are not submitted, the petitioner must include an affidavit detailing the efforts made to obtain such records and the reasons for their unavailability." Vaccine Rule 2(c)(2)(B)(i). Furthermore, if petitioner's claim is "based in any part on the observations or testimony of any person, the petitioner should include the substance of each person's proposed testimony in a detailed affidavit(s) supporting all elements of the allegations made in the petition." Vaccine Rule 2(c)(2)(B)(ii).

Special masters have found in favor of vaccine administration where direct documentation of vaccination is unavailable. In such cases, preponderant evidence has been found in other medical records and/or witness testimony. For example, corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. See Lamberti v. Sec'y of Health & Human Servs., No. 99-507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007) (finding multiple medical record references to vaccine receipt to constitute adequate evidence of administration); Groht v. Sec'y of Health & Human Servs., No. 00-287V, 2006 WL 3342222, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006) (finding a treating physician's note—"4/30/97—Hep B. inj. # 1 (not given here) (pt. wanted this to be charted)"—to be sufficient proof of vaccination); Wonish v. Sec'y of Health & Human Servs., No. 90-667V, 1991 WL 83959, at *4 (Cl. Ct. Spec. Mstr. May 6, 1991) (finding parental testimony "corroborated

strongly by medical records [referring] back to the [vaccination]" to be sufficient to establish vaccine administration).

Addressing the value of medical records in general, the Federal Circuit has noted that such records "warrant consideration as trustworthy evidence." Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). The Circuit added that "[t]he records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." Id.

In addition to corroborative medical records, lay testimony has been found to be a sufficient basis for finding that a vaccine was administered as alleged. Alger v. Sec'y of Health & Human Servs., No. 89-31V, 1990 WL 293408, at *2, *7 (Cl. Ct. Spec. Mstr. Mar. 14, 1990) (finding oral testimony from a parent and the doctor who administered the vaccine to be "more than adequate to support a finding that the vaccine was administered").[5]

### General Assessment of Arguments and Evidence

The sole issue is whether Ms. Riley received the flu vaccine on October 12, 2009. She offers her own affidavit and that of the nurse who allegedly administered the vaccine to support vaccine receipt. Additionally, Ms. Riley relies on several citations in her medical records from after October 12, 2009, which refer to her earlier receipt of the flu vaccine.

### Petitioner's Factual Assertions

Ms. Riley, an administrator at Florida Hospital, states that, at the urging of her charge nurse, she received a trivalent influenza vaccine from Registered Nurse

---

[5] See also Taylor v. Sec'y of Health and Human Servs., No. 90-857V, 1991 WL 115031 (Cl. Ct. Spec. Mstr. June 12, 1991); Berry v. Sec'y of Health and Human Servs., No. 90-339V, 1990 WL 293448 (Cl. Ct. Spec. Mstr. Nov. 15, 1990). The Court of Federal Claims has recognized the existence of precedent supporting the proposition that a court may base a finding of vaccination on lay testimony. Epstein v. Sec'y of Health & Human Servs., 35 Fed. Cl. 467, 478 (Fed. Cl. 1996); see also Brown v. Sec'y of Health & Human Servs., 18 Cl. Ct. 834, 839-40 (1989) (finding proof of vaccination in the absence of contemporaneous medical records based on a mother's testimony, her personal calendar, and a charge for the vaccine on the physician's billing statement), rev'd on other grounds, 920 F.2d 918 (Fed. Cir. 1990).

Dyan Sneeringer on October 12, 2009.  Exhibit 16 at 1, ¶¶ 2, 6; exhibit 2, ¶ 8.  According to Ms. Riley, the hospital sets up an influenza vaccine clinic each flu season and encourages employees to receive a flu shot.  Exhibit 16 at 1, ¶¶ 3-4.  Although she had never received a flu shot before, Ms. Riley decided that, as someone who may be exposed to a flu outbreak, it was prudent to receive the vaccine.  Id. at 1, ¶ 5.  Although the vaccines are typically administered in the Employee Clinic, Ms. Riley states that she received hers in the hospital's PCU Unit because it was a busy time on her floor and she was unable to leave.  Id. at 2, ¶¶ 7-8.  Ms. Riley states that several days after receiving the flu shot, she began experiencing lower extremity pain and swelling, which she later described to Ms. Sneeringer.  Id. at 2, ¶ 9-10.

Ms. Sneeringer recalls being told of Ms. Riley's adverse reaction a few days after she administered the flu vaccine to her in October 2009.  Exhibit 17 at 2, ¶ 8.  She states that after reviewing Ms. Riley's medical history and conducting a proper screening, and with Ms. Riley's signed consent, she administered a flu shot.  Id. at 1, ¶ 7.  Ms. Sneeringer remembers feeling regret and remorse about Ms. Riley's situation despite knowing she was not at fault.  Id. at 2, ¶ 8.  Although she offered her sworn statement years after the incident in question, Ms. Sneeringer states that she is "able to remember [Ms. Riley's] unique situation because of the adverse reaction [Ms. Riley] experienced as a result of the influenza vaccine that [she] administered."[6]  Id.

### Petitioner's Medical Records

On October 19, 2009, Ms. Riley reported to Dr. Politano complaining of bilateral leg pains.  Exhibit 7 at 19.  Dr. Politano noted that Ms. Riley had received a "Flu shot a week ago."  Id.  Less than a month later, on November 4, 2009, Ms. Riley presented to Dr. Malik with "severe pain and paraesthesias and weakness lower extremity."  Exhibit 4 at 3.  Dr. Malik recorded, "Four weeks ago, she had a flu shot.  A week later, she developed numbness, tingling, burning sensation over the bilateral feet of the dorsum of the feet."  Id.

---

[6] Ms. Sneeringer's supplemental affidavit (exhibit 17) is dated January 22, 2013, more than three years after October 12, 2009, the date of vaccine administration.  Her first affidavit (exhibit 1), which is similar to her supplemental affidavit, and is dated January 2012, did not contain Ms. Sneeringer's explanation of how she remembered administering a flu shot to Ms. Riley so long after doing so.

On November 5, 2009, Ms. Riley reported to Dr. Aziz that "she was given a flu short [sic] about a month ago" and thereafter began experiencing stiffness and swelling in her lower extremities. Exhibit 8 at 3; see also id. at 5 (containing Dr. Aziz's signature line). In his assessment, Dr. Aziz noted the possibility of "reactive arthropathy since [Ms. Riley's condition] was preceded by her flu injection." Id. at 4.

On November 12, 2009, a month after the alleged vaccination, Ms. Riley returned to Dr. Politano who noted "1st flu shot ever" at the top of his form. Exhibit 7 at 20. He added that the "only thing different prior to [symptom onset] was flu shot." Id. On the same day, Ms. Riley was seen for a physical therapy evaluation. Exhibit 6 at 2. In his report, Physical Therapist Matthew Hixon noted, "Patient received a flu shot. Later she was on a treadmill and felt her ankles tighten up and start to hurt." Id.

On December 15, 2009, Ms. Riley was seen by Dr. Siddiqui. Exhibit 2 at 3. Dr. Siddiqui noted, "Flu Shot – Early October," and questioned whether Ms. Riley's bilateral lower extremity neuropathy was "flu vac[cine] related." Id.

Additional Proof of Vaccination

In addition to her medical records, Ms. Riley filed an employee incident report (exhibit 18), her VAERS report (exhibit 21), and a letter from the VAERS staff confirming the receipt of her adverse event report (exhibit 19).

More than three months after her alleged flu vaccination, on January 24, 2010, Ms. Riley filled out a Florida Hospital Employee Incident Report Form. Exhibit 18. On the form, Ms. Riley wrote, "Flu shot given by Diane [sic] Sneeringer on 10/12/09," followed by a description of her subsequent lower extremity problems. Id. In her motion, she asserts that her incident report was "witnessed by two nurses from Florida Hospital."[7] Pet'r Mot. at 4.

On March 1, 2010,[8] Ms. Riley filled out a VAERS report. Exhibit 21. On the VAERS form, she reported that she received a FLUARIX vaccine produced by

---

[7] The Secretary challenges this characterization as inaccurate, pointing out that the report was not attested to or signed by the nurses listed. Resp't Resp. at 5.

[8] See supra n.3.

GlaxoSmithKline, lot number "AFLUA747CA."[9]  Id.  Additionally, she identified the date of vaccination as "10/12/09."  Id.  Thereafter, the VAERS staff sent Ms. Riley a letter, dated March 5, 2010, confirming the receipt of her report.  Exhibit 19.

## Discussion

Ms. Riley has adequately detailed her efforts to obtain her vaccination record.  The Secretary too has attempted to obtain a vaccination record from Ms. Riley's employer, but with no success.  Nevertheless, the record as a whole indicates that Ms. Riley received a flu vaccine on October 12, 2009.

The first mention of the flu vaccine in Ms. Riley's medical records was on October 19, 2009, when she was seen by Dr. Politano.  Exhibit 7 at 19.  This record constitutes trustworthy evidence.  Ms. Riley's report of her vaccination was made to a health care professional a week after administration for the purpose of facilitating diagnosis and treatment of her condition.  At the time, accuracy was of utmost importance.  Moreover, the vaccination was received in such close temporal proximity to her visit to Dr. Politano that misremembering is unlikely.

Ms. Riley's record from her October 19, 2009 doctor visit and those records from subsequent visits with health care professionals constitute trustworthy evidence of her vaccination.  See Cucuras, 993 F.2d at 1528.  Furthermore, these records are corroborated by Ms. Riley's employee incident report and her VAERS report.  They are also consistent with her own averments and those of Ms. Sneeringer.

## Conclusion

Based on the record as a whole, including Ms. Riley's medical records, her affidavit, and the affidavit of the administering nurse, she has established by preponderant evidence that she received the flu vaccine on October 12, 2009.

A status conference is scheduled, sua sponte, for **Monday, July 15, 2013 at 11:00 A.M. Eastern Time**.  The parties should be prepared to discuss the next

---

[9] The Secretary notes in her response that Ms. Riley has not "explained how and where she obtained the lot number and manufacturer information," but adds that she has "no reason to believe that petitioner would intentionally falsely represent to VAERS that she received a vaccination."  Resp't Resp. at 5-6.

8

steps in this case.  Any questions may be directed to my law clerk, Tucker McCarthy, at 202.357.6392.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master