John CUCURAS and Maria Cucuras,
parents and next friends of Nicole
Cucuras, Petitioners–Appellants,

v.

SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN SER-
VICES, Respondent–Appellee.

No. 92–5172.

United States Court of Appeals,
Federal Circuit.

May 14, 1993.

Robert T. Moxley, Gage & Moxley, Cheyenne, WY, argued for petitioners-appellants.

Vincent Matanoski, Attorney, Torts Branch, Dept. of Justice, Washington, DC, argued for respondent-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., and Helene M. Goldberg, Attorney.

Before RICH, NEWMAN, and RADER, Circuit Judges.

RADER, Circuit Judge.

Petitioners, parents and next friends of Nicole Cucuras, appeal the United States Court of Federal Claims' denial of compensation to Nicole under the National Vaccine Injury Compensation Program. 42 U.S.C. §§ 300aa–10 to 300aa–34 (1988 & Supp. III 1991). The Court of Federal Claims rejected petitioners' claim that the special master erred by according greater weight to contemporaneous medical records than to later, conflicting oral testimony. *Cucuras v. Secretary of Dep't of Health & Human Servs.*, 26 Cl.Ct. 537, 542–43 (1992). The trial court also sustained the special master's determination that petitioners did not show a causal link between the vaccination and the onset of Nicole's seizure disorder. *Cucuras*, 26 Cl.Ct. at 543. Because the special master and the

court properly assessed the testimonial and medical evidence, this court affirms.

## BACKGROUND

Nicole Cucuras was born on February 9, 1989. On February 26, Nicole was hospitalized following a choking episode. On April 8, 1989, Nicole received a DPT (diphtheria-tetanus-pertussis) vaccination. The record presents conflicting accounts of the events following the vaccination.

Petitioners testified to the special master that the night of and the day after the inoculation, Nicole began exhibiting symptoms of an adverse reaction to the shot. These symptoms allegedly began as "screaming" and "continuous crying," and progressed to include startle reactions, jerking motions, and hand thumping. Petitioners further alleged that they contacted Nicole's pediatrician on April 14, 1989, only to be told "not to worry." Neither petitioners nor the pediatrician could locate a record of this call.

On May 5, 1989, Nicole's medical records show that she underwent a checkup. The pediatrician noted that Nicole's startling and choking was within normal limits. On May 7, Mansfield General Hospital admitted Nicole after she awoke gasping for breath. The hospital's physicians performed an electroencephalogram (EEG). This test showed a potential for focal and generalized seizure disorder and mild diffuse encephalopathy. A CT scan the following day was normal.

Three days later, Nicole was transferred to Columbus Children's Hospital. Columbus Children's Hospital made several entries in Nicole's records on the date of her admittance. According to those records, Nicole's parents said that she had experienced a "two week history of spells." Nicole's parents also reported that her seizures began "within a week" after her DPT vaccination. Petitioners repeated this assertion to Nicole's treating neurologist, Dr. A. David Rothner of the Cleveland Clinic Foundation, on June 23, 1989. Dr. Rothner's post-evaluative notes state: "Nicole was perfectly well until a week after the DPT shot."

Before the special master, petitioners introduced expert testimony to show that the vaccine in fact caused Nicole's seizures. The experts' opinions, however, were at variance with one another. While Dr. Mark R. Geier would find actual causation up to seven days after the shot, Dr. Marcel Kinsborne would not go beyond three days. Both relied on studies performed in the 1970s.

The Department of Health and Human Services responded with its own expert. Dr. Arnold Gale relied on a report compiled by the Institute of Medicine (IOM), pursuant to the Act. The IOM report concluded that no causal connection existed between DPT vaccines and infantile spasms.

Based on this evidence, the special master determined that Nicole had not suffered an injury within the temporal limits of the vaccine table. *Cucuras*, 26 Cl.Ct. at 545 (reprinting special master's Nov. 22, 1991 bench ruling). Moreover the special master determined that the vaccine did not actually cause Nicole's injury. *Id.* at 545–46.

## DISCUSSION

### Standard of Review

■ The Court of Federal Claims may reverse a special master's findings and conclusions only in the face of arbitrary, capricious, or unlawful decisions. 42 U.S.C. § 300aa–12(e)(2). This court reviews the Court of Federal Claims determination under this highly deferential standard *de novo*. *Bradley v. Secretary of the Dep't of Health & Human Servs.*, 991 F.2d 1570, 1574 (Fed.Cir. Apr. 22, 1993); *Hines v. Secretary of the Dep't of Health & Human Servs.*, 940 F.2d 1518, 1523–24 (Fed.Cir.1991). The Supreme Court discussed the arbitrary and capricious standard in terms of reliance on factors Congress placed beyond consideration, of failure to consider an important part of the program, of articulation of a decision running counter to the evidence, or of implausibility beyond a difference of expert opinion. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

### Vaccine Injury Compensation

■ The Public Health Service Act sets forth a vaccine injury table. 42 U.S.C. § 300aa–14. The table, in effect, "deter-

mines by law that the temporal association of certain injuries with the vaccination suffices to show causation." *Grant v. Secretary of the Dep't of Health & Human Servs.*, 956 F.2d 1144, 1147 (Fed.Cir.1992). When other requirements of § 300aa–13(a)(1) have been met, the table specifies a time frame after vaccination within which onset of the listed injuries creates a presumption that the vaccine caused the injury. When this presumption arises, the inquiry shifts to a search for alternative etiologies. *Grant*, 956 F.2d at 1149.

In determining whether the onset of Nicole's injury occurred within the table time limits, the special master weighed a variety of evidence. At length, however, the special master, based on a preponderance of the evidence, concluded that Nicole's seizures began a week or so after the vaccination. In reaching this conclusion, the special master weighed heavily the evidence contained in Nicole's medical records.

One record entry, dated May 10, 1989, identified Nicole as a "12 week old white (female) infant with a 2 week history of 'spells.'" A two-week history of spells places the onset of Nicole's seizures around April 26—more than two weeks past her April 8 vaccination. Another entry in this record notes that Nicole "had immunizations 1 week prior to onset of the spell." These records identify Nicole's parents as the sources of this information.

Another record—apparently authored by Dr. Rothner, a treating pediatrician—noted that Nicole was "perfectly well" until one week after the DPT vaccination. Several other records made during Nicole's early medical treatments discuss the onset of her seizures. Most of the references indicate that Nicole's seizures began a week after her immunization. No record places that onset earlier.

Based on a review of this evidence, the Court of Federal Claims concluded:

> The testimony presented by the petitioners did not refute the contemporaneous records or adequately explain why, if the petitioners were certain that Nicole's illness began on the day following her vaccination, they nevertheless reported to medical personnel that she was well until one week after the vaccination. ...

The following conclusion of the special master's decision is reasonable: "Overall, I believe that the evidence in the written records to which I referred is too strong to be overcome by the testimony of the parents." The record does not demonstrate that the special master's decision was arbitrary, capricious or an abuse of discretion. *Cucuras*, 26 Cl.Ct. at 543. On review of the record, this court agrees.

■ Neither the trial court nor the special master erred in their reliance on medical records to determine the onset of injury. The Vaccine Act expressly bars the court or a special master from finding a table injury "based on the claims of the petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa–13(a)(1). Moreover the Supreme Court counsels that oral testimony in conflict with contemporaneous documentary evidence deserves little weight. *United States v. United States Gypsum Co.*, 333 U.S. 364, 396, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1947). This court's predecessor adopted the same principle. *Montgomery Coca Cola Bottling Co. v. United States*, 615 F.2d 1318, 1328, 222 Ct. Cl. 356 (Ct.Cl.1980).

Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

■ In this case, the special master heard and considered petitioners' testimony. Nonetheless the special master concluded that their testimony, in the face of contrary medical record evidence, did not carry their burden of persuasion. The Court of Federal Claims discerned nothing arbitrary, capricious, or unlawful about this finding. This court agrees. Petitioners did not show by a preponderance of evidence that the onset of Nicole's seizure injury occurred within the vaccine table's three-day limit for DPT vaccines.

When unable to show that an injury fits within the vaccine table, a petitioner may alternatively show by preponderant evidence that the vaccine was the actual cause of the injury. 42 U.S.C. § 300aa–11(c)(1)(C)(ii). In an effort to show causation in fact, petitioners in this case supplied medical opinion testimony. In particular, Dr. Geier concluded that, notwithstanding a week between the onset of injury and vaccination, the DPT vaccine caused Nicole's seizure disorder. Dr. Geier premised his testimony on the National Childhood Encephalopathy Study performed in Great Britain in the 1970s.

Dr. Gale, a pediatric neurologist, provided a contrary medical opinion. According to Dr. Gale, most neurologists would not conclude that the vaccine caused a seizure disorder arising more than three days after vaccination. Dr. Kinsbourne, a pediatric neurologist testifying on behalf of petitioner, stated that the DPT vaccine would not be implicated in causing a seizure disorder which first arose a week after vaccination.

To resolve conflict amongst experts, the special master consulted as well the conclusions of the recent report of the National Academy of Science's Institute of Medicine. The Vaccine Act commissioned the IOM study. According to the 1991 study, "there is no causal relation between the DPT vac-cine and … infantile spasms." In weighing the IOM study, the special master noted:

> [B]ecause of the scope of the IOM study, what its mission was, and the recent dat[e] of its issuance, I find it to be authoritative, and I think that it is entitled to a great deal of weight.

*Cucuras*, 26 Cl.Ct. at 546 (reprinting special master's Nov. 22, 1991 bench ruling). Accordingly, the special master found no causation in fact of Nicole's seizure disorder.

In reviewing the decision on actual causation, the Court of Federal Claims found nothing arbitrary, capricious, or unlawful in the special master's procedure or findings. On further review, this court agrees.

### Conclusion

In this case, the special master weighed thoroughly and correctly the evidence of table injury and causation in fact. This court, like the Court of Federal Claims, discerns nothing arbitrary, capricious, or unlawful in the special master's consideration of and conclusions from the evidence. Petitioners did not show a temporal or causal link between the vaccine and Nicole's severe disorder.

AFFIRMED.