# United States Court of Appeals for the Federal Circuit

_____

**CHRISTIE KIRBY,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

_____

2020-2064

_____

Appeal from the United States Court of Federal Claims in No. 1:16-vv-00185-LAS, Senior Judge Loren A. Smith.

_____

Decided: May 20, 2021

_____

RICHARD GAGE, Richard Gage, PC, Cheyenne, WY, argued for petitioner-appellant.

MALLORI BROWNE OPENCHOWSKI, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, C. SALVATORE D'ALESSIO, HEATHER L. PEARLMAN.

_____

Before MOORE, TARANTO, and CHEN, *Circuit Judges*.

Moore, *Circuit Judge*.

Christie Kirby appeals a decision of the United States Court of Federal Claims reversing a special master's ruling that she is entitled to damages under the Vaccine Act. *Kirby v. Sec'y of Health & Human Servs.*, 148 Fed. Cl. 530 (2020). We reverse.

BACKGROUND

Ms. Kirby received a flu shot in her right arm on October 8, 2013. J.A. 56, ¶ 2. One week later, Ms. Kirby visited Nurse Practitioner Jennifer Chandler and complained of persistent arm pain, numbness, and tingling that began immediately after the injection. J.A. 58. NP Chandler referred Ms. Kirby to Dr. Gregory Henry, who examined Ms. Kirby on October 16, 2013. Ms. Kirby described the pain to Dr. Henry as "moderate" and complained of reduced muscle strength. J.A. 59–60. Dr. Henry diagnosed Ms. Kirby with radial neuritis and complications due to vaccination. J.A. 61.

In a follow-up appointment with Dr. Henry on October 23, 2013, Ms. Kirby reported her strength had improved, her pain had decreased but was still mild-to-moderate, and her right thumb was still numb. J.A. 62. Two weeks later, Ms. Kirby reported no change in pain or numbness, but her wrist and hand had become "very weak." J.A. 67.

On November 12, 2013, Ms. Kirby saw a physical therapist and reported that her pain was a "2/10." J.A. 72. Ms. Kirby also told the physical therapist that she "started really noticing" the pain and muscle weakness two days after her flu shot. The physical therapist prescribed one month of in-person physical therapy in conjunction with a home-exercise program. J.A. 74.

On November 14, 2013, Ms. Kirby underwent electromyographic (EMG) testing and reported that "[h]er symptoms [were] getting better." J.A. 76. Ms. Kirby then returned to Dr. Henry on November 21, describing her pain

as mild and intermittent, her strength as improved, and her numbness as unchanged. J.A. 80. Dr. Henry noted that Ms. Kirby's EMG test results were negative and determined she had "5/5 normal muscle strength." J.A. 80–81.

On December 10, 2013, Ms. Kirby completed her in-person physical therapy. The discharge summary reported that (1) Ms. Kirby's pain was a "0/10," (2) she had regained full muscle strength except in right thumb extension, which had improved from a "4/5" to a "+4/5," and (3) her numbness had decreased by 80%. J.A. 84–85. The discharge summary also instructed Ms. Kirby to continue her home exercises. *See id.*

On December 12, 2013, Ms. Kirby visited Dr. Henry again and reported mild right arm pain in the morning that goes away "after being up a bit," almost normal strength, and occasional tingling, but no numbness in her right thumb. J.A. 87. Dr. Henry examined Ms. Kirby and determined she had achieved maximum medical improvement (MMI) and no longer had any impairment. J.A. 88.

Then, from January 2014 to July 2015, Ms. Kirby visited NP Chandler five times for reasons unrelated to her vaccine injury and generally reported "feeling fine." J.A. 91; *see also* J.A. 102, 107, 110. On January 16, 2014, Ms. Kirby visited NP Chandler "to get her FMLA [Family and Medical Leave Act] paper work filled out." J.A. 91. On October 28, 2014, Ms. Kirby visited NP Chandler regarding pain and swelling in her legs and feet, which NP Chandler diagnosed as edema. J.A. 98–100. On February 3, 2015, Ms. Kirby again visited NP Chandler regarding her FMLA paperwork. J.A. 102. On March 19 and July 21, 2015, Ms. Kirby visited NP Chandler regarding a weight loss drug. J.A. 106, 110. The records of these visits are silent about the existence or nonexistence of any arm pain, muscle weakness, or numbness.

Ms. Kirby visited NP Chandler for the last time on October 13, 2015, and she complained of mild and intermittent pain in her right arm.  J.A. 114–15.  Ms. Kirby reported that the pain had "decreased tremendously" since her 2013 flu shot, that she did not have any limitations due to the pain, and that she did not have any muscle weakness.  *Id.*

Ms. Kirby petitioned the Claims Court for compensation under the Vaccine Act, 42 U.S.C. § 300aa–1 *et seq.*  The special master ruled that Ms. Kirby is entitled to such compensation.  The Claims Court reversed.  Ms. Kirby appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

In Vaccine Act cases, we review the Claims Court's decision de novo, applying the same standard of review it applied in reviewing the special master's decision.  *Milik v. Sec'y of Health & Human Servs.*, 822 F.3d 1367, 1375–76 (Fed. Cir. 2016).  We review the special master's legal conclusions de novo and his findings of fact under an arbitrary-and-capricious standard.  *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1277–78 (Fed. Cir. 2005); *Porter v. Sec'y of Health & Human Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011).  "We do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder."  *Id.*  "[R]eversible error is extremely difficult to demonstrate if the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision."  *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000) (internal quotation marks omitted).

After the special master ruled in Ms. Kirby's favor, the government filed a Motion for Review with the Claims Court.  The government's motion raised three arguments:

(1) the special master erred by applying an erroneous legal standard under the guise of an expert credibility determination; (2) the special master applied an impermissibly low burden of proof in evaluating Ms. Kirby's evidence of causation; and (3) the special master's finding that Ms. Kirby's injury lasted more than six months, thereby satisfying 42 U.S.C. § 300aa-11(c)(1)(D), was arbitrary and capricious. J.A. 8–9.

The Claims Court agreed with the government's third argument and reversed the special master's finding that Ms. Kirby's injury lasted more than six months. Because the Claims Court reversed on that issue, it did not rule on the government's first two arguments but nonetheless expressed its belief that they are "well-founded." J.A. 13.

We first address the Claims Court's determination that it was arbitrary and capricious to find Ms. Kirby's injury lasted more than six months. We then turn to the government's additional arguments.

I

It was not arbitrary and capricious for the special master to find that Ms. Kirby's vaccine injury lasted more than six months. The special master based his finding on plausible evidence, i.e., Ms. Kirby's lay testimony, corroborating documentation, and expert testimony. J.A. 38–40. Ms. Kirby testified that she continued her home exercises until her symptoms went away, which was "well over a year" after she finished in-person physical therapy in December 2013. J.A. 136:1–18, 150:12–22. Evidence of record corroborates Ms. Kirby's testimony. First, Ms. Kirby kept her home exercise instruction sheets and produced them at trial. J.A. 118–19. Second, her medical records indicate that she reported recurring arm pain to NP Chandler in October 2015:

The patient is a 40 year old female who presents with a complaint of pain. The onset of the pain has

> been gradual and has been occurring in an inter-
> mittent pattern for [2] years (after receiving flu
> vaccine). The course has been recurrent. The pain
> is described as mild. The pain is described as being
> located in right arm.

J.A. 114. Third, Ms. Kirby's expert witness, Dr. Marcel Kinsbourne, testified that intermittent pain is consistent with radial neuritis, the injury with which Dr. Henry diagnosed Ms. Kirby due to her vaccination. J.A. 151:5–14, 156:4–16.[1] This is sufficient evidence, considered in light of the record as a whole, that the special master's finding must stand.

In reversing, the Claims Court applied a presumption that Ms. Kirby's medical records are "accurate and complete" to conclude that her testimony could not support a finding of persistence of symptoms for six months. J.A. 10–11. The Claims Court reasoned that because Ms. Kirby's medical records from January 2014 through July 2015 are silent about her vaccine injury and indicate she was "feeling fine," they undermine her testimony that she continued to experience symptoms during this period. *See id.* The genesis of this presumption appears to be *Robi v. Sec'y of Health & Human Servs.*, No. 12-352V, 2014 WL 1677116, at *1 (Fed. Cl. Spec. Mstr. Apr. 4, 2014). There,

---

[1]   That Dr. Kinsbourne did not treat Ms. Kirby or discuss her care with her treating physicians is immaterial. Dr. Kinsbourne can corroborate Ms. Kirby's allegations through expert testimony indicating that her reported symptoms are consistent with her diagnosis. The government conceded that "Dr. Kinsbourne is entitled to make the opinion that [Ms. Kirby's] injury can occur like that." *Kirby v. Sec'y of Health & Human Servs.*, No. 20-2064, Oral Arg. at 27:40–29:10, *available at* http://oralarguments.cafc. uscourts.gov/default.aspx?fl=20-2064_04082021.mp3.

a special master purported to derive the presumption from our precedent:

> Medical records that are created contemporaneously with the events they describe are presumed to be accurate. *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Not only are medical records presumed to be accurate, they are also presumed to be complete, in the sense that the medical records present all the problems of the patient. Completeness is presumed due to a series of propositions. First, when people are ill, they see a medical professional. Second, when ill people see a doctor, they report all of their problems to the doctor. Third, having heard about the symptoms, the doctor records what he or she was told.

*Id.*

The Claims Court adopted *Robi*'s reading of *Cucuras*. J.A. 9–10; *see also Caron v. Sec'y of Health & Human Servs.*, 136 Fed. Cl. 360, 377 (2018). The government urges us to do the same, arguing that "the *Robi* presumption . . . stems from this Court's long-standing precedent in *Cucuras*." Oral Arg. at 24:58–25:08; *see also* Appellee's Br. at 15. We reject the *Robi* presumption that medical records are accurate and complete as to all the patient's physical conditions.

Nothing in *Cucuras* supports either the presumption or *Robi*'s "series of propositions." In *Cucuras*, the petitioners testified that their infant daughter began experiencing seizure-like symptoms the night after receiving a DPT vaccination. 993 F.2d at 1527. Contemporaneous medical records, however, repeatedly reported that the daughter's symptoms did not present until at least one week after the DPT shot. *See id.* at 1527–28. In denying compensation, the special master relied on these medical records. We affirmed, rejecting the argument that the special master

committed any reversible error in crediting medical records over conflicting testimony. *Id.* at 1528. We explained that "oral testimony in conflict with contemporaneous documentary evidence deserves little weight." *Id.* We further explained that medical records are generally "trustworthy" because they "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions," where "accuracy has an extra premium." *Id. Cucuras* stands for the unremarkable proposition that it was not erroneous to give greater weight to contemporaneous medical records than to later, contradictory testimony. We did not hold that medical records are presumptively accurate and complete. Nor did we state that when a person is ill, he reports all his problems to his doctor, who then faithfully records everything he is told.

We reject as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions. Although a patient has a "strong motivation to be truthful" when speaking to his physician, *see* FED. R. EVID. 803 advisory committee's note to 1975 enactment, that does not mean he will report every ailment he is experiencing, or that the physician will accurately record everything he observes. A patient having a heart attack is not likely to mention his runny nose, nor is his physician likely to record it. As the Claims Court has recognized, physicians may enter information incorrectly and "typically record only a fraction of all that occurs." *Shapiro v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 532, 538 (2011) (citing *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991)). We see no basis for presuming that medical records are accurate and complete even as to all physical conditions.

In the absence of this presumption, a reasonable fact finder could conclude that Ms. Kirby's medical records from January 2014 through July 2015 do not conflict with her testimony. Although these medical records are silent about the existence of any lingering symptoms, they are also

silent about the *non*existence of such symptoms. This case is therefore distinct from *Cucuras*, where the petitioners said one thing to their physician and another thing to the special master. 993 F.2d at 1527–28. As the Claims Court acknowledged in *Shapiro*, "the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance." 101 Fed. Cl. at 538 (quoting *Murphy*, 23 Cl. Ct. at 733). The silence can, moreover, be explained by the fact that Ms. Kirby had reached maximum medical improvement and thus exhausted all available treatment, *see* J.A. 88, or that she was visiting the doctor for reasons unrelated to her vaccine injury, *see, e.g.*, J.A. 91 (stating that Ms. Kirby "is just here today to get her FMLA paper work filled out"). Accordingly, it was not arbitrary and capricious for the special master to find no conflict between Ms. Kirby's testimony and the lack of a reference to her vaccine injury in the medical records from January 2014 through July 2015. *See* J.A. 38–39.

At oral argument, the government disputed that "we are dealing with complete silence after December of 2013." Oral Arg. at 17:32–40. The government argued that because the January 2014 medical record indicates Ms. Kirby underwent a physical examination, but does not mention any neurological symptoms, we can infer there were "no symptoms reproduceable on examination." *Id.* at 17:41–19:00 (citing J.A. 91–92). For support, the government relied on a short statement in the January 2014 medical record: "Neurological: Not Present- Dizziness." J.A. 92. There is no evidence suggesting that this notation indicates Ms. Kirby and her physician discussed all possible neurological symptoms or conditions. It may simply be this notation suggests only that Ms. Kirby did not present with dizziness, and it does not indicate that Ms. Kirby was asked about or tested negative for any pain, numbness, or tingling related to her vaccine injury. We therefore see no merit to the government's argument that the special

master's findings regarding Ms. Kirby's medical records were arbitrary and capricious.

Nor are Ms. Kirby's various statements that she was "feeling fine" with "no complaints" inconsistent with her testimony. J.A. 91, 102, 106, 110. Those statements are general in nature and do not necessarily mean she was in perfect health. Indeed, Ms. Kirby also reported joint pain, depression, anxiety, and other ailments during those visits. J.A. 92, 103, 107, 111. Thus, the special master's determination that there is no conflict between Ms. Kirby's testimony and her reports of "feeling fine" was not arbitrary and capricious. *See* J.A. 39.

Because a reasonable fact finder could conclude that Ms. Kirby's testimony is not inconsistent with her medical records from January 2014 through July 2015, it was not arbitrary and capricious for the special master to credit that testimony in finding that Ms. Kirby's vaccine injury lasted more than six months. Accordingly, we reverse the Claims Court's decision.

II

The government advances two additional arguments for reversing the special master's decision. Although the Claims Court did not rule on the government's additional arguments, the government agreed that we "certainly ha[ve] the authority to consider those arguments." Oral Arg. at 31:43–54; *see also* Appellee's Br. at 21–25. We have considered the government's arguments and find them unpersuasive.

First, the government argues that the special master erred by "cloak[ing] the application of an erroneous legal standard in the guise of a credibility determination." Appellee's Br. at 22 (internal quotation marks omitted); *see also id.* at 21–23. The government fails, however, to identify the erroneous legal standard that the special master allegedly applied. That omission is fatal to the

government's argument. *See Porter*, 663 F.3d at 1250–51 (reversing the Claims Court's decision to reject the special master's credibility determination where it "made no determination that the special master applied an erroneous legal standard"). The government's argument is simply a veiled attack on the special master's credibility determination. Indeed, the thrust of the government's argument is that the special master erred because the government's expert, Dr. Peter Donofrio, was the "far-better-credentialed expert." Appellee's Br. at 22–23. Dr. Donofrio's alleged superior pedigree is not a valid basis for disturbing the special master's credibility determination.

Second, the government argues that the special master applied an impermissibly low burden of proof in evaluating Ms. Kirby's medical theory of causation. Respondent's Memorandum of Objections at 11–13, *Kirby v. Sec'y of Health & Human Servs.*, 148 Fed. Cl. 530 (2020) (No. 16-185). Because Ms. Kirby alleges a vaccine injury not listed in the Vaccine Injury Table, she must provide a reputable medical theory to support her claim that the vaccination caused her injury. *Althen*, 418 F.3d at 1278. The government argues that the special master improperly treated Dr. Donofrio's concessions that Dr. Kinsbourne's theory of causation is "possible" and "conceivable" as concessions that his theory is "reputable, sound and reliable." Respondent's Memorandum of Objections at 12–13. The special master did no such thing. He instead cited Dr. Donofrio's testimony as merely buttressing Dr. Kinsbourne's theory, which the special master credited as reputable. *See* J.A. 33–35. The government relies on *Boatmon v. Secretary of Health & Human Services*, 941 F.3d 1351, 1359 (Fed. Cir. 2019), but that case is inapt because the special master there "articulated a lower 'reasonable' standard" in assessing the petitioners' medical theory of causation. Here, by contrast, the special master recited the correct legal standard. J.A. 33 ("[P]etitioners must provide a reputable medical theory . . . based on a sound and

reliable medical or scientific explanation.") (internal quotation marks omitted). Thus, the government has not shown that the special master's findings regarding causation were arbitrary and capricious.

## CONCLUSION

Because the special master's finding that Ms. Kirby's vaccine injury lasted more than six months was not arbitrary and capricious, and because we reject the government's additional arguments for affirmance, we reverse the Claims Court's decision reversing the special master's determination that Ms. Kirby is entitled to damages under the Vaccine Act.

## REVERSED

## COSTS

Costs to the appellant.