# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1228V**

|  |  |
|---|---|
| DONNA VERDISCO,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: July 10, 2025 |

*Theodore Heiser, Suisman Shapiro, New London, CT, for Petitioner.*

*Camille Jordan Webster, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On September 18, 2020, Donna Verdisco filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on September 20, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find that, more likely than not, the flu vaccine was administered in Petitioner's left arm, and that the onset of her shoulder pain likely began within 48 hours of vaccination.

### I. Procedural History

In his Rule 4 Report, Respondent objected to compensation on two grounds (ECF No. 47). First, Respondent argued that Petitioner had not established that she received the alleged vaccination, since she had not filed a vaccine administration record, and the medical records did not establish the type and administration location of the vaccine. Second, Respondent asserted that Petitioner had not established that the onset of her pain began within 48 hours of vaccination.

Thereafter, I issued an order directing Petitioner to show cause by September 30, 2024 why the case should not be dismissed due to these deficiencies (ECF No. 48). This deadline was extended multiple times, and on November 22, 2024, Petitioner filed a response to the show cause order (ECF No. 52) asserting that the case should not be dismissed because she had obtained a vaccination record, which she attached to her response. The vaccination record (ECF No. 52-1) shows that Petitioner received a flu vaccine in her *right* arm on September 20, 2017. Her show cause response did not address the onset of her shoulder pain.

I subsequently observed that the vaccination record indicated the vaccine was administered in Petitioner's *right* arm, but the Petition asserted a claim for a *left* shoulder injury, and I therefore directed Petitioner to determine if an amended petition and/or additional evidence as to the vaccination situs should be filed.[3] Scheduling Order, issued Nov. 27, 2024 (ECF No. 54). In response, Petitioner filed a document titled "Amended Petition" (ECF No. 56).[4] This filing was signed by Petitioner, rather than counsel of record as required by Vaccine Rule 14(b)(3).

### II. Factual Finding

#### A. Legal Standard

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this

---

[3] I also noted that the vaccination record had not been designated with an exhibit number, and directed Petitioner to re-file it with an exhibit number. Petitioner has not done so.

[4] Petitioner also filed a notice of filing stating that she was filing Exhibits 24-26 (ECF No. 57). These were not properly labeled or paginated, and were not filed as separate PDFs attached to a notice of filing as required. Petitioner is cautioned that future non-complaint filings may be stricken.

determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[5] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they "suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine . . . ." Section 11(c)(1)(D).

"[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*,

---

[5] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where Petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where Petitioner sought care for four months, followed by fifteen-month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where Petitioner did not seek additional treatment after the five-month mark).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### B. Medical Records

On September 20, 2017, Petitioner received a flu vaccine (ECF No. 52-1). The vaccination record states that it was administered in her *right* arm, although Petitioner asserts this is inaccurate.

Five days later (September 25, 2017), Petitioner saw her primary care provider ("PCP") for an annual examination. Ex. 1 at 5. The record is silent on shoulder pain, and on examination Petitioner was found to have "[n]ormal range of motion," with no edema or tenderness. *Id.* at 5-7.

Petitioner returned to her PCP ten days after vaccination (September 30, 2017), and was now complaining of left arm pain "[a]fter a flu injection." Ex. 1 at 68. She explained that she had received a flu vaccine ten days prior, and thereafter experienced left shoulder pain and swelling with limited range of motion. Ex. 1 at 68. On examination, her left shoulder was swollen and exhibited limited abduction. *Id.* at 70. She was assessed as having had a traumatic vaccination and given steroid medication, along with being advised to rest and use ice and Tylenol as needed. *Id.* at 71.

The following month (October 24, 2017), Petitioner saw orthopedist Dr. Michael Redler for left shoulder pain. Ex. 2 at 1. Petitioner stated that she had received a flu shot several weeks prior and had "severe pain with the injection and then pain running down her arm and inability to move her left arm." *Id.* On examination, Dr. Redler noted "[e]xquisite tenderness to palpation" and swelling around the left deltoid. *Id.* at 2. Any motion caused severe pain, and he observed that she "seems to have nerve like pain . . . along axillary nerve distribution." *Id.* Her MRI showed some generalized edema and impingement tendinosis, but no evidence of a tear. *Id.* Petitioner received a cortisone injection and was referred for physical therapy ("PT"). *Id.*

A few weeks later (November 13, 2017), Petitioner underwent a PT evaluation for her left shoulder. Ex. 6 at 7. She explained that "about five weeks ago she received a flu shot and the shot was administered very high in her arm. She felt a severe pain in her arm and screamed." *Id*. The pain traveled down her arm into her hand, and she was unable to move her arm for two hours after the injury. *Id*. Since then, she had severe pain that she rated nine out of ten at present, and ten out of ten at worst. *Id*. She was assessed as having pain along with deficits in strength, range of motion, mobility, and stability. *Id*. at 8. Thereafter, Petitioner continued to treat with PT and followed up with Dr. Redler and her PCP, in addition to undergoing an EMG and consulting a chiropractor. Ex. 1 at 45-47; Ex. 2 at 4-9; Ex. 3 at 1-4; Ex. 5 at 1-7; Ex. 6 at 11-40.

### C. Testimonial Evidence

Petitioner filed an affidavit in support of her claim. Ex. 8. She states that she received the vaccine at work, and "[i]mmediately following the administration of the vaccine, I experienced significant pain in my left shoulder at and around the site of the vaccination shot." *Id*. at ¶¶ 3, 7. The pain ran down her left arm into her hand, and she left work early due to the pain. *Id*. She learned from her employer's human resources department that many people complained that the nurse had administered vaccines too high on their arms. *Id*. at ¶ 8. In the following days, Petitioner's shoulder pain did not subside, and eventually as the pain worsened she lost much of her range of motion. *Id*. at ¶¶ 9, 10.

On January 22, 2025, Petitioner filed a document that is titled "Amended Petition of Donna Verdisco" (ECF No. 56). This filing was not signed by counsel of record as required by Vaccine Rule 14(b)(3), but instead by Petitioner herself (ECF No. 56 at 11). Additionally, while this document purports to be notarized, the notary is not named, nor does the document contain a notary stamp or state when the notary's commission expires. *Id*. The signature above the "Notary Public" line is illegible. *Id*. And the filing does not comply with the requirements of 28 U.S.C. § 1746 for sworn declarations. As such, although I treat it as testimonial evidence, the document has authenticity and reliability deficiencies that infect the weight it can be given.

In this unsworn January 22, 2025 testimonial statement, Petitioner states that the vaccination record indicating that the vaccine was given in her right arm is inaccurate (ECF No. 56 at 7 ¶ 8). She adds that when she saw her PCP on September 25, 2017, for a pre-scheduled annual examination, she discussed her shoulder pain, although this was not documented in the record. *Id*. at 7 ¶ 12. Her PCP went through the usual annual examination and told her to return to follow up on her shoulder pain if it did not resolve – which she did, five days later. *Id*.

### D. Finding of Fact

I find that the record preponderantly supports a finding that Petitioner's September 20, 2017 vaccine was likely administered in her left arm. Although the vaccination record states it was administered in her right arm, *all* other evidence supports a left arm situs. Thus, when Petitioner presented to her PCP just ten days after vaccination, she related her left shoulder pain to the vaccine. Similarly, she complained of left shoulder pain from vaccination to her orthopedist and physical therapist. That she promptly sought care strengthens her claim in this regard.

I also find that the record preponderantly supports a finding that the onset of Petitioner's shoulder pain occurred within 48 hours after vaccination. Petitioner sought treatment for shoulder pain just *ten days* after vaccination. When seeking care, she consistently reported vaccination-associated pain. Although she did not specifically tell her treaters that her pain began within 48 hours, this is not required. Instead, the standard for resolving factual questions such as the onset of pain is whether the petitioner has demonstrated the disputed fact by a preponderance of the evidence. Vaccine Act § 13(a)(1); *Kelly v. Sec'y of Health & Human Servs*., No. 21-2202V, 2025 WL 1276206, at *5 (Fed. Cl. Spec. Mstr. Mar. 18, 2025) ("Contrary to Respondent's suggestion, there is no requirement that a medical record state that a petitioner's pain began specifically within 48 hours in order for a claimant to succeed on a SIRVA Table claim"); *Roberson v. Sec'y of Health & Human Servs.*, No. 21-2309V, 2025 WL 605724 (Fed. Cl. Spec. Mstr. Jan. 24, 2025) (stating that the "absence of a specific date" of onset in medical records is not "compelling or particularly meaningful," and finding onset within 48 hours where the petitioner sought care 23 days after vaccination and reported pain for two to three weeks at the time of vaccination).

That the record of Petitioner's September 25, 2017 annual examination is silent on shoulder pain, and even states that she had normal range of motion without edema or tenderness, weakens Petitioner's position somewhat. However, the fact that she returned to her PCP five days later – and only ten days after vaccination – complaining of shoulder pain weighs in Petitioner's favor as to onset. And she maintains that she *did* report shoulder pain at the September 25th visit, and was told to return if it persisted – which she did, just five days later.

### III. Scheduling Order

Because the document filed as an amended petition was not signed by counsel, it is treated as testimonial evidence rather than an amended pleading. Petitioner may re-file it as an amended petition signed by counsel of record if desired.

- **Petitioner may file, by no later than <u>Monday, August 04, 2025</u>, an amended petition.**

- **Respondent shall file, by no later than <u>Monday, September 08, 2025</u>, a status report indicating whether, in light of my ruling herein, he is willing to engage in tentative discussions regarding settlement or proffer or remains opposed to negotiating.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master